CITY SELECT AUTO SALES, INC., a New Jersey corporation, individually and as the representative of a class of similarly situated persons, Plaintiff,

v.

DAVID/RANDALL ASSOCIATES, INC. and Raymond Miley, III, Defendants.

Civil Action No. 11–2658 (JBS/KMW).

United States District Court, D. New Jersey.

Signed March 27, 2015.

Alan C. Milstein, Esq., Sherman, Silverstein, Kohl, Rose & Podolsky, PC, Moorestown, NJ, and Tod A. Lewis, Esq., Jonathan B. Piper, Esq., Bock & Hatch, LLC, Chicago, IL, for Plaintiff City Select Auto Sales, Inc.

F. Emmett Fitzpatrick, III, Esq., Flamm Walton, P.C., Blue Bell, PA, for Defendants and Third Party Plaintiffs David Randall Associates, Inc. and Raymond Miley, III.

**OPINION**

SIMANDLE, Chief Judge:

*Contents*

I. INTRODUCTION ................................................407

II. BACKGROUND ................................................408
 A. Factual Background ................................................408
 B. Procedural History .................................................411

III. Discussion................................................412

IV. Defendants' Motion to Decertify the Class ................................412
 A. Standard of Review Applicable to Defendants' Motion ....................413
 B. Defendants Fail to Demonstrate that the Class Must be Decertified.........413

V. Plaintiff's Motion for Class–Wide Summary Judgment ........................415
 A. Standard of Review Applicable to Plaintiff's Motion ......................415
 B. Summary Judgment Will Be Granted in Favor of the Class and against
 Defendants as to the TCPA Claim ....................................416
 1. The Subject Facsimile Transmissions Constitute "facsimile
 advertisements" under the TCPA ................................416

2. No Issues of Fact Exist as to the Unsolicited Nature of the
 Facsimile Advertisements ........................................417
3. Defendants Constitute "Senders" under the TCPA ....................419
4. Issues of Fact Preclude Summary Judgment with respect to the
 Claim of Individual Liability against Mr. Miley .....................420
5. The Record Demonstrates the Class's Entitlement to an Award of
 Statutory Damages in the Amount of $22,405,000 ...................422
 a. Biggerstaff's Reports and the Underlying B2B Records
 Constitute Admissible Evidence for Purposes of
 Summary Judgment ........................................423
 b. Any Outstanding Issue Concerning the Third–Party Default
 Defendants Does Not Preclude the Entry of Summary Judg-
 ment in Favor of the Class .................................426
 c. Determination of Damages and Entry of Judgment ...............427

VI. CONCLUSION ..................................................428

## I. INTRODUCTION

In this class action arising under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter, the "TCPA"), Plaintiff City Select Auto Sales, Inc. (hereinafter, "Plaintiff") alleges that Defendants David/Randall Associates, Inc. (hereinafter, "Randall") and Raymond Miley, III (hereafter, "Miley" and collectively, the "Defendants") transmitted unlawful facsimile advertisements 44,832 times to 29,113 different fax numbers, through a third-party entity Business to Business Solutions (hereinafter, "B2B").

Plaintiff now seeks the entry of class-wide summary judgment against Defendants with respect to the TCPA claims (*see generally* Pl.'s Br. [Docket Item 141]), while Defendants move to decertify the Class. (*See generally* Defs.' Br. [Docket Item 133].) Both motions, however, principally result from, and/or are motivated by, three prior rulings of this Court.

First, on February 7, 2012, the Court rejected Defendants' position that the limitations period applicable to Plaintiff's claims precluded this action from proceeding. *See generally City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, No. 11–2658, 2012 WL 426267, at *5–*6 (D.N.J. Feb. 7, 2012). In particular, the Court found, at the Rule 12(b)(6) phase, that the pendency of a related state court action

tolled the limitations period for the federal Class members, thereby rendering their claims timely. *See id.* at *5–*6.

Then, on December 20, 2013, the Court granted Plaintiff's motion for class certification, and certified Plaintiff's TCPA claim under Federal Rule of Civil Procedure 23(b)(3) on behalf of the following class:

> All persons or entities, with whom David Randall Associates did not have an established business relationship, who were successfully sent one or more unsolicited faxes during the period March 29, 2006, through May 16, 2006, stating, "ROOF LEAKS? ? ? REPAIRS AVAILABLE Just give us a call and let our professional service technicians make the repairs!" and "CALL: David/Randall Associates, Inc. TODAY."

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299, 308 (D.N.J.2013). Finally, on September 24, 2014, the Court denied Defendants' motion for summary judgment with respect to Plaintiff's TCPA, state law conversion, and individual liability claims, principally on the basis that the undisputed facts failed to demonstrate Defendants' entitlement to judgment as a matter of law. *See City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, No. 11–2658, 2014 WL 4755487 (D.N.J. Sept. 24, 2014).

In seeking the entry of class-wide summary judgment, Plaintiff relies in part upon the Court's denial of Defendants' motion for summary judgment, and argues that the undisputed record establishes the Class's entitlement to judgment as a matter of law to statutory damages under the TCPA in the amount of $22,405,000. (*See generally* Pl.'s Br. [Docket Item 141].) Plaintiff, in particular, submits that the uncontroverted record demonstrates that Defendants hired B2B to send facsimile advertisements on Defendants' behalf without the recipients' prior express invitation or permission, nor the appropriate opt-out notice, and in violation of the TCPA. (*Id.* at 4, 14–24.) Defendants, however, insist that factual disputes pervade the record as to the admissibility of Plaintiff's reconstruction of the B2B computer records, certain Class members consent to receive facsimile advertisements, and Mr. Miley's personal liability for the disputed transmissions. (*See generally* Defs.' Opp'n [Dock Item 146].)

In addition to opposing Plaintiff's motion, however, Defendants move to decertify the Class on the basis that the Court's December 20, 2013 Certification Order rested upon "a false factual premise," namely, that only residents of New Jersey comprised the putative class members encompassed by Plaintiff's proposed class definition. (*See* Defs.' Br. [Docket Item 133].) In particular, Defendants argue that Plaintiff's "belated production" of the names and addresses of the class members recently revealed that non-New Jersey residents comprise 64% of the Class. (Defs.' Reply [Docket Item 140], 3–5.) Therefore, Defendants assert that the presently certified Class suffers from a "fundamental jurisdictional" deficiency, because this Court "indisputably lacks subject matter jurisdiction" over any recipient of facsimile transmissions beyond the borders of the State of New Jersey. (*Id.* at 1–5.)

The pending motions present three primary issues. First, the Court must consider whether the inclusion of non-New Jersey residents in the certified Class constitutes newly discovered evidence. Second, the Court must determine whether such composition requires modification of the Court's prior decision on class certification. Finally, the Court must consider whether genuine issues of disputed fact concerning Defendants' liability under the TCPA preclude the summary disposition of this action in favor of the Class.[1]

For the reasons explained below, Defendants' motion to decertify class will be denied, and Plaintiff's motion for class-wide summary judgment will be granted with respect to Defendant David/Randall Associates, Inc., but denied with respect to Defendant Raymond Miley, III.[2]

## II. BACKGROUND

### A. Factual Background

The factual record in this action remains largely unchanged from that set forth in the Court's September 24, 2014 Opinion.[3]

---

1. The Court exercises subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

2. The Court conducted oral argument on the pending motions on February 25, 2015.

3. At the outset, the Court rejects Defendants' assertion that the Court's September 24, 2014 denial of their motion for summary judgment precludes, by itself, the entry of summary judgment in Plaintiff's favor, and/or provides a basis to oppose Plaintiff's statement of material facts. (*See, e.g.* Defs.' RSMF at ¶¶ 26–35, 37–47.) As stated below the Court's September 24, 2014 Opinion found that the undisputed record failed to demonstrate *Defendants'* entitlement to judgment as a matter of law on Plaintiff's TCPA and personal liability claims against Defendant. *See City Select Auto Sales, Inc.*, 2014 WL 4755487, at *7, *9–*10. In so finding, the Court rejected Defen-

Nevertheless, the Court turns to the parties' respective statements of material facts.

■ In the spring of 2006, Raymond Miley, III acted as President, Shareholder, Officer and Director of David/Randall Associates, Inc., a commercial roofing company organized under the laws of the Commonwealth of Pennsylvania. (*See* Pl.'s SMF at ¶¶ 2–3.) During the same period, third-party defendants Caroline Abraham and Joel Abraham "operated an unincorporated advertising business" named " 'Business to Business Solutions,' " or "B2B," which disseminated facsimile advertisements, on behalf of its .clients, to a list of

U.S. companies purchased from InfoUSA.[4] (*Id.* at ¶¶ 10, 12, 17.)

Mr. Miley, who directed David/Randall's "marketing and advertising" campaigns (*id.* at ¶ 5), became aware of B2B's services after B2B solicited David/Randall's business, and offered to market David/Randall's roofing services through B2B's fax advertising services. (*Id.* at ¶¶ 26.) Following the solicitation, Mr. Miley directed his administrative assistant/office manager, April T. Clemmer, to contact B2B on his behalf, in order to inquire into the specific pricing and distribution details of B2B's fax marketing services.[5] (Clemmer Dep. at 9:22–16:1.)

dants' *legal* position that they did not constitute a sender under the TCPA, and Defendants' *factual* position that the record failed to demonstrate "Miley's 'personal involvement in the commission of any tort of the violation of any statute.' " *Id.* at \*9 (citation omitted). Rather, as relevant here, the Court found that the *undisputed* factual record "clearly depict[ed] Miley as intimately involved" in the "discussions and negotiations with B2B concerning the fax broadcasting program." *Id.* Consequently, the Court finds Defendants' reliance upon the Court's September 24, 2014 decision insufficient, standing alone, as a basis to oppose Plaintiff's motion for summary judgment, or to otherwise demonstrate the presence of a genuine issue of fact. (*See, e.g.,* Defs.' SMF at ¶¶ 26–25, 36–67, 69–71, 73.) Moreover, whether a factual dispute is "material" will depend upon the context of the parties' respective burdens at trial. As with cross-motions for summary judgment, the test for granting or denying summary judgment is applied on a motion-by-motion basis.

4. The Court rejects Defendants' assertion that "[e]very single factual assertion" set forth in the "unsworn" Declaration of Caroline Abraham constitutes inadmissible evidence in context of Plaintiff's pending motion for summary judgment. (*See, e.g.,* Defs.' SMF at ¶ 10.) Affidavits or declarations in support of or in opposition to a motion for summary judgment must "be made on personal knowledge," must "affirmatively" indicate the affiant's competence to testify to such matters, and

must set forth facts that would otherwise "be admissible in evidence." Fed.R.Civ.P. 56(c)(4); *see also Leese v. Martin,* No. 11–5091, 2013 WL 5476415, at \*6 (D.N.J. Sept. 30, 2013) (same). In other words, the Court may rely upon an affidavit for purposes of summary judgment only to the extent such affidavit constitutes evidence at least potentially admissible at trial. *See Hurd v. Williams,* 755 F.2d 306, 308 (3d Cir.1985). Here, Ms. Abraham swore to the contents of her affidavit, under penalty of perjury, before a notary public, and based her statements upon personal knowledge. (*See generally* Abraham Aff.) Therefore, as stated in greater detail below, the Court finds that Ms. Abraham's affidavit constitutes admissible evidence for purposes of summary judgment. *See The Phoenix Ins. Co. v. W. Jersey Air Conditioning & Heating Co.,* No. 09–5570, 2010 WL 4259174, at \*3 (E.D.Pa. Oct. 26, 2010).

5. Though, as stated below, Ms. Clemmer directed all of David/Randall's communications with B2B, the undisputed record reflects that Ms. Clemmer "reported directly to Miley," and did not have independent "authority to enter into contracts on behalf of [David/Randall], [to] bind the company either contractually or to pay moneys," and/or to issue checks from "the company bank account." (Pl.'s SMF at ¶¶ 8–9; Defs.' SMF at ¶¶ 8–9 ("Undisputed").)

After Ms. Clemmer obtained additional information concerning B2B, Mr. Miley suggested that the service might be beneficial for advertising David/Randall's service repairs. (Clemmer Dep. at 15:8–13.) Ms. Clemmer, accordingly, continued to communicate with B2B concerning B2B's pricing, proposed advertisements, and the targeted audience for the potential "fax blast" campaign. (Pl.'s SMF at ¶¶ 35–36; *see also* Pl.'s Ex. 3 to Miley Dep.) Following an exchange of proposed advertisements, on March 26, 2006, Ms. Clemmer faxed "the approved ad" to B2B, along with a list of zip codes to be "solicited for business." (Pl.'s Ex. 8 to Miley Dep.; Pl.'s SMF at ¶ 41.)

The approved fax, which appears to have remained unchanged throughout the remainder of B2B and David/Randall's relationship, stated "ROOF LEAKS??? REPAIRS AVAILABLE," and directed recipients in "Eastern PA, NJ, and Mid–State DE" to call David/Randall for "the repair and maintenance of most major roofing systems." (Pl.'s Exs. 6–7 to Miley Dep.; *see also* Pl.'s SMF at ¶ 42.) In addition, the ad provided an array of contact information for David/Randall, and indicated that the advertisement had been sent to the recipient because some "person" at the recipient's business "supplied the fax number and permission to send faxes." (Pl.'s Exs. 6–7 to Miley Dep.) Nevertheless, the advertisement provided "a toll free 'Remove' number" for recipients to be removed from the distribution list. (*Id.*)

Thereafter, David/Randall received a letter (directed to the attention of Ms. Clemmer), which stated that B2B had "everything needed to start [David/Randall's] faxing campaign, except payment." (Exs. 8–9 to Clemmer Dep.) Ms. Clemmer, in turn, faxed B2B a "David/Randall Associates, Inc." check for $422.00 in connection with David/Randall's "campaign for 12,000

faxes" on March 28, 2006, and directed that the transmissions be sent on the *"morning"* of March 29, 2006. (Pl.'s Ex. 9 to Miley Dep. (emphasis in original).)

Following the first "advertisement blast," however, David/Randall received multiple complaints concerning the unsolicited nature of the advertisements. (*See* Exs. 12, 27 to Clemmer Dep.) Several complaints further stated that the remove hotline seemed ineffective and/or unavailable, and suggested that the advertisements violated applicable law. (*See* Ex. 27 to Clemmer Dep.) As a result, Ms. Clemmer forwarded the list of "Annoyed Recipients" to B2B on March 29, 2006, and requested that the identified fax numbers be removed from any future distribution lists. (*Id.; see also* Pl.'s SMF at ¶ 49.)

Despite the complaints, Ms. Clemmer wrote to B2B on March 31, 2006, and stated that David/Randall "would like to do another fax marketing blitz" during the morning of an upcoming **"rainy day."** (Exs. 13–14 to Clemmer Dep. (emphasis in original).) In particular, Ms. Clemmer indicated that David/Randall sought to send another 12,000 transmissions of the previously-approved ad, and requested that the "areas solicited for th[e] campaign" include "New Jersey: Hunterdon, Mercer, Burlington, Camden, Gloucester & Salem Counties[;] Delaware: New Castle County only [; and] Pennsylvania: Bucks & Chester Counties." (*Id.*) Following confirmation from B2B, Ms. Clemmer faxed a David/Randall check to B2B in the amount of $394.00 as "payment-in-full" for the second "fax blitz." (Ex. 15 to Clemmer Dep.)

After the second advertisement blast, however, Ms. Clemmer again advised B2B to **"REMOVE"** various entities from the distribution list, particularly because several of the complainants "threatened to pursue legal action" and/or to contact the Federal Communications Commission.

(*Id.* (emphasis in original).) In addition, Ms. Clemmer stated that several of the recipients "notified" her that the law requires that a " '800' number opt out" be provided, and that many recipients reported that the existing hotline remained unavailable. (*Id.*)

Nevertheless, on April 12, 2006, Ms. Clemmer requested, on a third occasion, that B2B "send 18,000 faxes in [an additional] fax campaign," in addition to providing new numbers to be removed from B2B's distribution list. (Pl.'s SMF at ¶ 60; *see also* Ex. 17 to Clemmer Dep.) On the same day, Ms. Clemmer sent B2B a check for $565.00 in connection with David Randall's "3rd campaign [of] another 18,000 faxes," with instructions that the faxes **"BE SENT FRIDAY MORNING (4–14–06)!"**

Following the third fax "blitz," Ms. Clemmer again advised B2B, on April 17, 2006, of "requests to have FAX numbers removed from [B2B's] list." (Ex. 27 to Clemmer Dep.) Despite the continuing complaints, however, on May 12, 2006, David Randall authorized a "fourth-fax blasting campaign" on May 12, 2006. (Pl.'s SMF at ¶ 65.) As with the previous blasts, Ms. Clemmer requested that 12,000 faxes be sent "to the original area [David/Randall] targeted in March," i.e., New Jersey, New Castle County in Delaware, and Bucks and Chester Counties in Pennsylvania. (Ex. 22 to Clemmer Dep.) In addition, Ms. Clemmer enclosed a check for $394.00 and directed that the "Fax blast" be completed during the morning of May 15, 2006.

## B. Procedural History

On May 4, 2009, G. Winter's Sailing Center, Inc. filed a putative class action against David/Randall in the Superior Court of New Jersey, alleging that the same series of unsolicited faxes violated the TCPA. *See City Select Auto Sales, Inc.*

*v. David Randall Assocs., Inc.,* No. 11–2658, 2012 WL 426267, at *1 (D.N.J. Feb. 7, 2012). The state court pleading specifically alleged that " 'Defendant faxed the same and similar advertisements to Plaintiff and more than 39 other recipients without first receiving the recipients' express permission or invitation.' " *Id.* (citation omitted). The state court, however, never certified the action on behalf of a class. *Id.* Rather, because the plaintiff moved for certification "nearly two years" into the litigation, the state court denied the motion on timeliness grounds, and concluded that the case would proceed to trial only with respect to the claims of the single plaintiff. *Id.* at *2. The parties reached a settlement shortly thereafter, and the state court closed the case on April 27, 2011. *Id.* (citation omitted).

This federal action followed on May 10, 2011, similarly on the ground that David/Randall sent "form facsimile" advertisements to "29,113 unique fax numbers" without "prior express permission or invitation." (*See* Class Action Compl. at ¶¶ 13, 14, 29.) Defendants then moved to dismiss Plaintiff's Complaint, primarily on the grounds that the applicable limitations period barred Plaintiff's claims for relief. (*See* Defs.' Br. [Docket Item 8].)

On February 7, 2012, however, this Court concluded that, under *American Pipe & Construction Company v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the pendency of the state court putative class action tolled the limitations period for "claims on behalf of unnamed alleged recipients" of unsolicited facsimile advertisements "during at least the first fourteen months of the Superior Court action." *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.,* No. 11–2658, 2012 WL 426267, at *5–*6 (D.N.J. Feb. 7, 2012). Therefore, based upon the face of

the Complaint, the Court found the claims against Defendants timely. *See id.*

Defendants then answered Plaintiff's Complaint, and filed a third-party Complaint against the operators of B2B, Caroline Abraham and Joel Abraham (hereinafter, the "Abrahams"). [Docket Item 23.] The Abrahams, however, never responded to Plaintiff's Complaint, and the Court entered default on December 17, 2012. [Docket Item 53.]

On December 20, 2013, the Court certified Plaintiff's TCPA claim under Federal Rule of Civil Procedure 23(b)(3) on behalf of the following class:

> All persons or entities, with whom David Randall Associates did not have an established business relationship, who were successfully sent one or more unsolicited faxes during the period March 29, 2006, through May 16, 2006, stating, "ROOF LEAKS??? REPAIRS AVAILABLE Just give us a call and let our professional service technicians make the repairs!" and "CALL: David/ Randall Associates, Inc. TODAY."

*City Select Auto Sales, Inc.*, 296 F.R.D. at 308,[6] and then approved, subject to certain revisions, Plaintiff's proposed class notice form. *See City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, No. 11–2658, 2014 WL 413533, at *3 (D.N.J. Feb. 3, 2014).

This action thereafter proceeded on behalf of the identified Class and, on September 24, 2014, the Court denied Defendants' motion for summary judgment with respect to Plaintiff's TCPA, state law conversion, and individual liability claims. *See City Select Auto Sales, Inc.*, 2014 WL 4755487. The pending motions followed thereafter.

**6.** On March 20, 2014, the Court of Appeals for the Third Circuit denied Defendants' petition for leave to appeal this Court's certification opinion. *See City Select Auto Sales, Inc. v. David/Randall Associates, Inc.*, App. No. 14–8001.

## III. DISCUSSION

As stated above, the pending motions present diametrically opposed positions. Defendants' motion hinges upon their assertion that the Court's certification of this action on behalf of the identified Class rested upon a flawed factual premise, requiring that the Class be reduced by 64%. (*See generally* Defs.' Br.) Plaintiff's motion, by contrast, turns upon its assertion that the undisputed record warrants summary disposition of this action in favor of the presently certified Class. (*See generally* Pl.'s Br.) However, by challenging the propriety of the Class, Defendants' motion presents a threshold inquiry for resolution prior to Plaintiff's motion. Therefore, the Court will first address the merits of Defendants' motion to decertify.

## IV. DEFENDANTS' MOTION TO DE-CERTIFY THE CLASS

In support of "decertification," Defendants insist that the Court's certification decision rested upon the flawed premise that only New Jersey residents comprised the unnamed facsimile recipients in the state court putative class action. (Defs.' Br. at 3–5; Defs.' Reply at 1–5.) Defendants submit, however, that a "new" list of class members has revealed that non-New Jersey recipients comprise 64%, or 18,659 fax recipients, of the class. (Defs.' Br. at 4–5.) As a result, Defendants argue that the facts now reflect that "the New Jersey Superior Court never had jurisdiction over the putative claims of the 18,659 non-New Jersey recipients" based upon the "immutable" axiom that a state court lacks jurisdiction "over acts of non-residents which occur entirely outside of its borders." (Defs' Br. at 5; Defs.' Reply at 3.) Defendants therefore insist that "*American Pipe*

provides no possible support for tolling putative claims" that extend beyond the state court's jurisdiction, rendering the claims of the non-New Jersey residents "definitively time-barred," and requiring that they be excluded from the Class. (Defs.' Br. at 5.) Plaintiff, however, argues that Defendants' untimely assertions have been waived and/or lack merit, particularly because New Jersey state courts may, in appropriate cases, assert jurisdiction over non-resident class members in a multistate class actions. (*See* Pl.'s Opp'n at 2–3, 7–11.) For the reasons that follow, Defendants' motion will be denied.

### A. Standard of Review Applicable to Defendants' Motion

The parties dispute the manner in which to construe Defendants' motion. (*Compare* Pl.'s Opp'n at 1–8 (arguing that Defendants' motion constitutes an inappropriate motion for reconsideration), *with* Defs.' Reply at 1, 3 (insisting that Defendants' motion presents a "never forfeited or waived" challenge to the Court's subject matter jurisdiction, rather than a motion for reconsideration).) Nevertheless, given the substantive assertions in Defendants' motion, the Court does not find this inquiry particularly complex.

Indeed, Federal Rule of Civil Procedure 23(c)(1)(C) specifically provides that an order determining whether to certify a class action "may be altered or amended" at any time prior to "final judgment." FED. R. CIV. P. 23(c)(1)(C). Rule 23(c)(1)(C) therefore enables courts to consider whether a prior class certification order should be revised " 'where the original determination [becomes] unsound' " based upon " 'a changed factual circumstance.' " *In re FleetBoston Fin. Corp. Sec. Litig.*, No. 02–4561, 2007 WL 4225832, at *5 (D.N.J. Nov. 28, 2007). Nevertheless, the Rule compels essentially the same inquiry as under Local Civil Rule 7.1(i). *See Kulig v. Midland Funding, LLC*, No. 13–4715, 2014 WL

6769741, at *1 (S.D.N.Y. Nov. 20, 2014) (noting that a court may revisit a prior decision on certification under Rule 23(c)(1)(C), if the movant identifies " 'compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' ") (citation omitted); *Fulford v. Transport Serv., Co.*, Nos. 03–2472, 03–2636, 2004 WL 1474574, at *1 (E.D.La. June 29, 2004) (same).

■ As a result, a party seeking modification of a prior certification decision must demonstrate either: " '(1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct a clear error of law or prevent manifest injustice.' " *Andreyko v. Sunrise Sr. Living, Inc.*, 993 F.Supp.2d 475, 478 (D.N.J.2014) (citations omitted).

### B. Defendants Fail to Demonstrate that the Class Must be Decertified

■ Based upon the submissions, the Court finds that Defendants' motion amounts to little more than a nuanced disagreement with the essential analysis set forth in the Court's prior Opinions. Critically, although Defendants assert that Plaintiff's belated production of the names and addresses of the class members implicated in this action only recently revealed "that the putative class *in this case* includes non-New Jersey residents," (Defs.' Reply at 4 (emphasis in original)), the record readily reflects that Defendants have long known that this action concerns facsimile recipients beyond the borders of the State of New Jersey.

Indeed, Mr. Miley testified that David/ Randall services "hundreds of companies" in its "primary area of business ... from Harrisburg east in Pennsylvania [and]

from midstate New Jersey south to midstate Delaware." (Miley Dep. at 56:11–15.) The disputed advertisements in this action, accordingly, all facially reflected David/Randall's solicitation of business throughout "Eastern PA, NJ, and Mid–State DE" (Pl.'s Ex. 14 to Miley Dep.), and David/Randall specifically requested that B2B advertise its services to businesses across more than 70 zip codes in Pennsylvania and at least one entire county in Delaware. (*See, e.g.,* Pl.'s Ex. 8 to Miley Dep.; Exs. 13, 17, 18, 22, 23 to Clemmer Dep.) Given these circumstances, Defendants can hardly be heard to claim that the presence of non-New Jersey recipients as class members in this action constitutes a new and/or recent development. Indeed, in repeatedly and expressly requesting that B2B transmit facsimile advertisements throughout Delaware, Pennsylvania, and New Jersey, Defendants themselves defined the multistate scope of the present Class.

Moreover, the geographic composition of the Class was readily apparent in 2010 when Defendants received the B2B hard drive containing the fax transmissions logs or, at the latest, in early 2011, following an examination of the B2B hard drive by Defendants' forensic experts. (*See* Pl.'s Opp'n at 4 n. 1; *see also* Ex. C to Defs.' Opp'n to Pl.'s Mot. for Class Certification (discussing the January 17, 2011 examination of the B2B hard drive by Defendants' "forensic experts").)

The composition of the Class therefore fails to constitute new evidence sufficient to warrant modification of the Court's decision on certification. Indeed, "in the absence of *materially* changed or clarified circumstances courts should not condone a series of rearguments" on the propriety of class certification, and Defendants' attempt to do so here warrants, without more, the denial of the pending motion. *Hartman v. United Bank Card, Inc.,* 291

F.R.D. 591, 597 (W.D.Wash.2013) (emphasis added); *see Shanahan v. Diocese of Camden,* No. 12–2898, 2014 WL 1217859, at *3 (D.N.J. Mar. 23, 2014) (generally noting that material changes do not include the assertion of "new arguments in order to get a second bite at the apple.") (citation and quotation marks omitted).

▪ Nevertheless, the Court also finds Defendants' "jurisdictional" challenge without merit. (Defs.' Reply at 2–3.) Critically, New Jersey law contains no blanket prohibition against non-New Jersey residents being included in New Jersey state court class actions. To the contrary, New Jersey courts have repeatedly found certification of multistate classes to be appropriate, provided that "variations in state law [do not] swamp common issues and defeat predominance." *Beegal v. Park W. Gallery,* 394 N.J.Super. 98, 925 A.2d 684, 694 (2007) (noting the permissibility of "multi-state" or "nationwide" class actions in New Jersey state courts, even in the absence of specific New Jersey conduct by the defendants) (citation omitted); *Delgozzo v. Kenny,* 266 N.J.Super. 169, 628 A.2d 1080, 1092 (1993) (noting same in connection with a non-New Jersey defendant that provided "'blue flame' oil furnaces" throughout New Jersey, New York, Connecticut, and the United States). Indeed, under certain, albeit rare circumstances, New Jersey law permits the application of a single state law to "all claims" in "a nationwide class action." *Beegal,* 925 A.2d at 694 (citation omitted). Therefore, the Court rejects Defendants' assertion that no set of circumstances would have empowered the Superior Court of New Jersey to certify a class comprised, in part, of non-New Jersey residents. (*See, e.g.,* Defs.' Reply at 2–3.) Rather, the weight of New Jersey authority readily reflects the state court's ability to consider the certification of a multistate class, particu-

larly where, as here, the action primarily turns on the application of a single federal law. The Court, accordingly, finds that the state court could conceivably have certified a TCPA class comprised of non-New Jersey residents.[7] Moreover, Defendants do not, and cannot, dispute this federal Court's authority to exercise subject matter jurisdiction over a multistate class in connection with this federal class action litigation. *See In re Sch. Asbestos Litig.,* 789 F.2d 996, 1010 (3d Cir.1986) (observing the plausibility of multistate class actions, but noting the need to analyze variations in state law in order to ensure that "class certification does not present insuperable obstacles"), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986).

For all of these reasons, the Court rejects Defendants' contention that this action must be decertified, or alternatively that the class must be narrowed to New Jersey residents, for lack of subject matter jurisdiction. The Court will, accordingly, deny Defendants' motion, and turns to Plaintiff's motion.

## V. PLAINTIFF'S MOTION FOR CLASS–WIDE SUMMARY JUDGMENT

In support of class-wide summary judgment, Plaintiff submits that the uncontroverted record demonstrates that Defendants hired B2B to send facsimile advertisements on Defendants' behalf without the recipients' prior express invitation or permission, nor the appropriate opt-out notice, and in violation of the TCPA. (*See generally* Pl.'s Br. at 4, 14–

24.) Defendants, however, insist that factual disputes pervade the record, and therefore preclude summary disposition in favor of Plaintiff and the Class. (See generally Defs.' Opp'n [Dock Item 146].) For the reasons that follow, Plaintiff's motion will be granted.

### A. Standard of Review Applicable to Plaintiff's Motion

Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Disputes over irrelevant or unnecessary facts, however, fail to preclude the entry of summary judgment. *Id.* In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, and must provide that party the benefit of all reasonable inferences. *Scott v. Harris,* 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Halsey v. Pfeiffer,* 750 F.3d 273, 287 (3d Cir.2014). However, any such inferences "must flow directly from admissible evidence[,]" because " 'an inference based

---

**7.** Nor does the fact that the New Jersey Appellate Division has questioned the superiority of the class action mechanism in the TCPA context require any different conclusion. *See, e.g., Levine v. 9 Net Ave., Inc.,* No. A–1107–00T1, 2001 WL 34013297 (N.J.Super.Ct.App.Div. June 7, 2001); *Local Baking Products, Inc. v. Kosher Bagel Munch, Inc.,* 421 N.J.Super. 268, 23 A.3d 469 (2011). To

the contrary, absent a definitive determination by an appellate state court in New Jersey that *no* TCPA class action could ever be maintained by trial courts in the State, it remains conceivable that the Superior Court in the earlier, related putative class action could have found certification of the TCPA claim appropriate.

upon [ ] speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'" *Halsey*, 750 F.3d at 287 (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n. 12 (3d Cir.1990); citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505).

### B. Summary Judgment Will Be Granted in Favor of the Class and against Defendants as to the TCPA Claim

■ The TCPA seeks to address "an increasingly common nuisance-telemarketing," *Erienet, Inc. v. Velocity Net*, 156 F.3d 513, 514 (3d Cir.1998), and specifically prohibits the transmission of a facsimile advertisement absent the recipient's prior express invitation or permission. *See* 47 U.S.C. § 227(a)(4), (b)(1)(C)(i)-(iii). Consequently, in order to grant summary judgment on a TCPA claim, the plaintiff must specifically point to evidence in the record sufficient to establish that: (1) the defendant utilized a "telephone facsimile machine" to send "one or more faxes;"[8] (2) that the transmissions constituted " 'advertisements;' " and (3) that the defendant sent the transmissions without the recipient's consent, absent application of one of the statutory exceptions. *Brodsky v. HumanaDental Ins. Co.*, No. 10–C–3233, 2014 WL 2780089, at *6 (N.D.Ill. June 12, 2014) (citation omitted). The Court will address Plaintiff's factual showing with respect to each requirement in turn.

### 1. The Subject Facsimile Transmissions Constitute "facsimile advertisements" under the TCPA

The TCPA defines an "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(4). Defendants do not dispute that the approved facsimile advertisements highlighted David/Randall's roofing services, and directed recipients to contact David/Randall for their "maintenance and repair needs". (*See generally* Defs.' SMF at ¶ 74; *see also* Pl.'s SMF at ¶ 74.) Indeed, Defendants admit that the subject facsimiles describe the commercial availability of property, goods, and/or services offered by David/Randall. (*See, e.g.*, Ex. D. to Pl.'s Br.; Ex. B. to Defs.' Opp'n; Pl.'s Ex. 6 to Miley Dep. (directing recipients to call David/Randall **"TODAY"** and to "let [its] professional service technicians make" any necessary roofing repairs).) Defendants further concede that David/Randall's records reflect that Mr. Miley approved the advertisement on David/Randall's behalf.[9] (*See* Defs.' SMF at ¶ 72; *see also* Pl.'s SMF at ¶ 72; Miley Dep. at 35:15–16 ("I don't recall approving it, but [the document] says I did.").) Therefore, the Court finds that the subject facsimiles constitute advertisements under the TCPA as a matter of law. *See* 47 U.S.C. § 227(a)(4) (noting that a qualifying advertisement under the TCPA need only advertise "the com-

---

**8.** The Court need not discuss the first element, because Defendants conceded that B2B utilized a fax machine, or an equivalent computer-based fax broadcasting application, in order to send the advertisements at issue in this litigation on Defendants' behalf. (Defs.' Opp'n at 27–28.) Indeed, throughout the course of this lengthy litigation, no party has challenged the fact that this action concerns, at its core, B2B's use of a "facsimile machine," as defined in 47 U.S.C. § 227(a)(3).

**9.** For that reason, and those stated below, the Court finds no credible support for Defendants' position that the ad "is facially suspect and cannot possibly be found to constitute even a representation of the fax which it purports to be without testimony from whoever actually created it." (Defs.' Opp'n at 30.) Critically, the record contains no fewer than forty identical copies of the disputed advertisements, nearly all of which come from Defendants' own documents and/or communications with B2B.

mercial availability or quality of any property, goods, or services").

## 2. No Issues of Fact Exist as to the Unsolicited Nature of the Facsimile Advertisements

■ The TCPA defines "unsolicited" as material "transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4).

Here, Defendants concede that neither David/Randall nor Mr. Miley obtained the facsimile recipients' express consent prior to contracting with B2B for the facsimile advertising campaigns. (*See* Defs.' SMF at ¶ 19.) Indeed, the undisputed record evidence reflects that Defendants never possessed a list of the intended fax recipients, nor requested such list from B2B. (*See id.*) Rather, Defendants argue that factual disputes preclude summary judgment, in light of Defendants' purported "pre-existing business relationship" with "at least 183" of the asserted class members, and because certain class members, including the named Plaintiff, "voluntarily and prominently publicized" their fax numbers for public distribution on their respective websites. (Defs.' Opp'n at 23–25 (citation omitted); *see also* Fallon Aff. At ¶ 7 (noting that 183 class members "had existing business relationships with David Randall Associates Inc., prior to April, 2006, either as customers or vendors").)

The Court, however, need not belabor Defendants' position, because the Court previously rejected Defendants' identical position in connection with the Court's decision on class certification. *See generally City Select Auto Sales, Inc.*, 296 F.R.D. 299.

■ Nevertheless, the Court notes that, as relevant here, the ban on unsolicited facsimile advertisements specifically does not apply if: (1) the sender has an "established business relationship" with the recipient, 47 U.S.C. § 227(b)(1)(C)(i), *and* (2) the recipient "voluntarily" publi-

cized "its facsimile number for public distribution." 47 U.S.C. § 227(b)(1)(C)(ii). In other words, "fax advertisements are not prohibited if the unsolicited advertisement is 'from a sender with an established business relationship'" *and* the sender obtained the fax number through an internet website. *City Select Auto Sales, Inc.*, 296 F.R.D. at 315 (citing 47 C.F.R. § 64.1200(a)(4)). The Federal Communications Commission, however, has specifically advised that the availability of a facsimile number on "a directory, advertisement or website does not alone entitle a person to send a facsimile advertisement to that number." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C.R. 3787, 3796 (2006). Therefore, publishing a fax number on a website does not, by itself, constitute consent to receive unsolicited fax advertisements under 47 U.S.C. § 227(b)(1)(C)(ii). *See id.*

Consequently, even if David/Randall had an existing business relationship with certain class members, the record contains no indication that class members sufficiently publicized their facsimile number "for public distribution" in accordance with 47 U.S.C. § 227(b)(1)(C)(ii), nor that any class members possessed both an established business relationship with David/Randall *and* a sufficiently publicized facsimile number. (*See generally* Fallon Aff.) Indeed, in support of their position, Defendants filed an affidavit with a list of entities with which David/Randall had existing business relationships prior to April 2006 (*see* Ex. C to Defs.' Opp'n), and then appended screen shots of *different* entities' online publication of their respective fax numbers. (*See* Ex. D to Defs.' Opp'n.) Defendants' position therefore fails, because Defendants have not shown any overlap between the class members with which they profess to have had established business relation-

ships and those which posted their facsimile numbers online. (*Compare* Ex. C to Defs.' Opp'n (setting forth David/Randall's list of existing business relationship), *with* Ex. D to Defs.' Opp'n (appending internet print outs for entities *not* included in David/Randall's list).)

Nor do the cases relied upon by Defendants compel any different result. (*See* Defs.' Opp'n at 24.) To the contrary, Defendants merely recapitulate cases specifically considered, and rejected, by the Court in connection with class certification. *See City Select Auto Sales, Inc.*, 296 F.R.D. at 315–16. Indeed, the Court's prior decision on class certification specifically found *Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, No. 08–481, 2009 WL 602019 (W.D.Wis. Mar. 9, 2009) and *Practice Mgmt. Support Servs., Inc. v. Appeal Solutions, Inc.*, No. 09–1937, 2010 WL 748170 (N.D.Ill. Mar. 1, 2010), inapposite because the plaintiffs in both actions consented to receive facsimile transmissions by *directly* providing relevant contact information to the defendants.

In *Landsman*, for example, the plaintiff's president specifically submitted a seminar enrollment form that provided plaintiff's fax number as a method of contact. 2009 WL 602019, at \*2. Indeed, the form itself specifically advised that, "PROVIDING YOUR FAX NUMBER CONSTITUTES AN EXPRESS INVITATION TO SEND YOU FAX ADVERTISEMENTS ABOUT FUTURE LORMAN SEMINARS." *Id.* at \*2. As a result, the *Landsman* court found that the form facially constituted plaintiff's "express permission" to receive fax advertisements. *Id.* at \*1. Similarly, in *Practice Mgmt. Support Servs.*, the court granted summary judgment in defendants' favor, because the plaintiff's president completed a contact form on the defendants' website, and specifically provided a fax number for purposes of obtaining information concern-

ing the defendants' products. 2010 WL 748170, at \*3. The *Practice Mgmt. Support Servs.* court, in turn, similarly concluded that the plaintiff's completion of a contact form constitutes consent. *Id.*

Critically, however, neither of these cases support Defendants' position that the publication of a fax number on a website establishes, without more, consent to receive fax advertisements. Nor does the record demonstrate any similar quantum of *direct* contact between the class members and David/Randall.

■ Moreover, even if the Court found that Defendants' submission raises a genuine issue of fact as to whether any class members consented to the advertisement of David/Randall's services, or had an existing business relationship with David/Randall, summary judgment on this issue would still be warranted because the record contains no genuine dispute that the advertisements failed to contain a statutorily-compliant opt-out notice. *See, e.g., See Holtzman v. Turza*, 728 F.3d 682 (7th Cir.2013) ("Because [the defendant] omitted [the required] opt-out notices, it does not matter which recipients consented or had an established business relation with [the defendant]."); *see also* 47 U.S.C. §§ 227(b)(2)(D), 227(b)(1)(C). Critically, in addition to the requirements stated above, application of the statutory exception requires that the advertisement contain an opt-out statement enabling the recipient to easily remove itself from any future unsolicited advertisements. *See* 47 U.S.C. § 227(b)(1)(C)(iii). In particular, the advertisement must clearly and conspicuously notify a recipient that it may opt out of receiving any future unsolicited advertisements, must state that the sender's failure to comply with a request for removal within 30 days violates applicable law, and must contain a "cost-free mechanism," including a domestic phone number *and* fax

machine number, for the recipient to transmit its removal request. 42 U.S.C. § 227(b)(2)(D)(i)-(v); 47 C.F.R. § 64.1200(a)(4).

The disputed facsimile advertisements in this instance contain no statement that the law obligates the sender to comply with any removal requests within a reasonable time, nor do the advertisements provide a toll-free domestic facsimile number for purposes of submitting such requests. (*See, e.g.*, Pl.'s SMF at ¶ 74.)[10] Rather, the advertisements deceptively claim an "exempt[ion] from most faxing regulations" and provide only a domestic contact telephone number, but no alternative fax number. (*Id.*) In addition, and perhaps most significantly, the notice does not clearly and conspicuously advise the recipient of its legal right not to receive such unsolicited faces, only noting instead that recipients may call the " **'Remove' Hotline**" in order to "STOP receiving faxes." (*Id.* (emphasis in original).) The opt-out notices therefore suffer from fatal defects, and preclude Defendants from relying upon the statutory exception. *See Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 67 F.Supp.3d 874, 884–85, No. 09–7299, 2014 WL 4376216, at *7 (N.D.Ill. Sept. 4, 2014) (finding, in a B2B case, nearly-identical opt-out notices defective, and granting summary judgment "as to whether the recipients consented to receive" faxes); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 10–253, 2012 WL 4074620, at * (W.D.Mich. June 21, 2012) (rejecting similar arguments in another B2B case).

For all of these reasons, the Court finds the Class entitled to summary judgment on the TCPA issue of whether class members consented to receive the disputed faxes.

### 3. Defendants Constitute "Senders" under the TCPA

The TCPA prescribes two parallel, and often blended, theories of "sender" liability relevant to this litigation: the first applies to "the person or entity" on "whose behalf" a third party transmits an unsolicited facsimile advertisement; the other applies to the person or entity "whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10); *see also In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C.R. 12391, 12407–08 (1995) (clarifying that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements"). In that regard, the TCPA, by its own terms, " 'creates a form of vicarious liability making an entity liable when a third party sends unsolicited communications on its behalf in violation of the Act.' " *Brodsky*, 2014 WL 2780089, at *6 (quoting *Bridgeview Health Care Ctr. v. Clark*, No. 09–C–5601, 2013 WL 1154206,

---

**10.** As stated above, Defendants do not genuinely dispute the contents of the facsimile advertisements, nor do Defendants dispute that the advertisements appended to Plaintiff's submissions accurately reflect the advertisement in the form approved by David/Randall. (*See, e.g.*, Defs.' SMF at ¶ 74.) Indeed, Defendants' own documents reflect that they received the *identical* advertisement, on numerous occasions, in connection with recipients' complaints concerning the unsolicited transmissions. (*See, e.g.*, Exs. 17, 27 to Clemmer Dep.) The Court therefore rejects Defendants' suggestion that "only a jury" can determine the "authenticity" of the fax advertisements at issue in this litigation, particularly because Defendants have proffered no evidence or expert testimony to infer that the identified faxes constitute something other than that purported by Plaintiff. (Defs.' Opp'n at 30–31). In addition, Defendants' speculation of possible "manufactured evidence" is unaccompanied by even an arguably factual basis, and is therefore insufficient to defeat summary judgment. (*Id.*)

at *4 (N.D.Ill. Mar. 19, 2013)). Moreover, defendants cannot exculpate themselves from "'liability simply by hiring an independent contractor'" for the purposes of transmitting "'unsolicited facsimiles on their behalf.'" *Brodsky*, 2014 WL 2780089, at *6 (citations omitted). Rather, "a person whose services are advertised in an unsolicited fax transmission, and on whose behalf the fax is transmitted, may be held [strictly] liable under the TCPA's ban on the sending of faxes," despite not physically transmitting the fax.[11] *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1254 (11th Cir.2014).

■ Here, the Court previously concluded that "the disputed facsimiles solely concern David Randall's roofing services, and nowhere advertise the goods, services, or products of any other individual or entity" and that "the record contain[ed] no dispute" that "B2B transmitted [the] advertisements on behalf of Defendants." *City Select Auto Sales, Inc.*, 2014 WL 4755487, at *7 (citing 47 C.F.R. § 64.1200(f)(10)). Indeed, the Court found that "Defendants [specifically] concede[d] such facts." *Id.* (citing Defs.' SMF at ¶ 5 ("*'B2B successfully sent 44,832 faxes for Defendants to 29,113 unique fax numbers . . . . the junk fax was sent 'on behalf of' [ ] Defendants'*") (emphasis in original).) In the present submissions, Defendants do not dispute these findings, nor point to any affidavits or other documents that suggest

a different conclusion. To the contrary, Defendants state, as a "fact[ ] of record," that "David Randall agreed to allow [B2B] to develop and conduct a fax advertising campaign on its behalf." (Defs.' Opp'n at 27–28.) Therefore, the Court concludes, as a matter of law, that Defendants constitute senders of the disputed faxes under the TCPA.

**4. Issues of Fact Preclude Summary Judgment with respect to the Claim of Individual Liability against Mr. Miley**

■ As the Court previously noted, "numerous district courts have concluded that individuals acting on behalf of a corporation may be held personally liable for violations of the TCPA where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *City Select Auto Sales, Inc.*, 2014 WL 4755487, at *9 (quoting *Connor v. Lifewatch, Inc.*, No. 13–3507, 2014 WL 4198883, at *5 (D.S.C. Aug. 20, 2014) (collecting cases)).

Here, Defendants argue that summary judgment must be denied with respect to the individual liability claim against Mr. Miley, because the Court's Opinion denying Defendants' motion for summary judgment referenced "factual disputes" concerning Mr. Miley's personal involvement

---

11. In this Court's decision denying Defendants' motion for summary judgment, the Court rejected Defendants' assertion that Defendants could not be held vicariously liable under the TCPA based upon the fact that B2B, rather than Defendants, indisputably transmitted the facsimile advertisements. *See City Select Auto Sales, Inc.*, 2014 WL 4755487, at *6–*7. In so finding, the Court adopted the reasoning of an *amicus* letter from the FCC filed in the *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris* action, in which "the FCC emphasized that the junk-fax provisions of the TCPA 'clearly allow[ ] a plaintiff to recover damages

[under a theory of direct liability] from a defendant who [transmitted] no facsimile to the plaintiff, but whose independent contractor did,' provided that 'the transmitted fax constitutes an unsolicited facsimile advertisement promoting the defendant's goods or services' in accordance with the 'binding regulatory definition' of 'sender' set forth in 47 C.F.R. § 64.1200(f)(1)." *Id.* (citation omitted). Since the Court's decision, the Court of Appeals for the Eleventh Circuit has similarly adopted the FCC's reasoning in defining "sender" for purposes of the TCPA. *See Palm Beach Gold Ctr.-Boca, Inc.*, 781 F.3d at 1254.

in the junk faxes that form the predicate of this litigation. (Defs.' Opp'n at 16–17.)

In so arguing, however, Defendants ignore the overall context of the Court's prior determination, and ignore the fact that the Court's discussion only served to reject Defendants' position that the record failed "to demonstrate Miley's 'personal involvement in the commission of any tort or the violation of any statute.'" *See City Select Auto Sales, Inc.*, 2014 WL 4755487, at *9 (citation omitted). Therefore, the Court rejects Defendants' position that the Court's prior Opinion constitutes the "law of the case" on the individual liability claim. (Defs.' Opp'n at 16–17.) Nevertheless, the Court again finds that factual disputes preclude the entry of judgment, as a matter of law, on the issue of Mr. Miley's individual liability under the TCPA.

■ At the outset, the Court notes that the factual record contains strong references to Mr. Miley's involvement in the subject advertisements. Mr. Miley served as David/Randall's President, Shareholder, Officer and Director. (*See* Pl.'s SMF at ¶ 2; Defs.' SMF at ¶ 2 ("Admitted").) Moreover, Defendants admitted that Mr. Miley led David/Randall's "marketing and advertising" during the relevant period, and admitted that Mr. Miley instructed Ms. Clemmer, at least initially, to contact B2B concerning its fax advertising services. (*See* Ex. B to Defs.' Opp'n.) Ms. Clemmer's testimony, in turn, consistently reflects that Mr. Miley "brought" B2B's solicitation to her attention and directed her to contact B2B on his behalf in order to discuss a potential fax campaign.

(Clemmer Dep. at 9:22–16:1, 28:5–8, 43:20–23.) Ms. Clemmer, in particular, testified that Mr. Miley acted as "the ultimate decision-maker in approving the" ads' forms, "determined the number of faxes" to be disseminated, the time within which to transmit such faxes. (*Id.* at 15:10–16, 20:4–21:8, 28:5–8, 43:20–23, 56:24–57:7, 61:5–9, 74:5–9.) Moreover, it is undisputed that Ms. Clemmer lacked the authority to enter into contracts or to authorize any payments on behalf of David/Randall. (*See* Pl.'s SMF at ¶ 3–9; Defs.' SMF at ¶ 3–9; Clemmer Dep. at 74:1–13.)

Nevertheless, the Court cannot ignore that Mr. Miley did not directly correspond with B2B, nor does Ms. Klemmer specifically disclose Mr. Miley's involvement in any of her correspondence with B2B. Moreover, though Mr. Miley testified that, as David/Randall's President, he authorized payment of marketing-related expenses, the undisputed record does not reflect that Mr. Miley personally signed any of the B2B payments or that he directly authorized the B2B payments.[12] Therefore, even if the Court again concluded that, "Miley's deposition testimony contains little more than 'broad memory failures and general denials' concerning his involvement in the dissemination of the facsimile transmissions" *City Select Auto Sales, Inc.*, 2014 WL 4755487, at *9 (citation omitted), the Court cannot ignore Mr. Miley's absence from the documentary evidence relied upon by Plaintiff, namely, Ms. Clemmer's correspondence with B2B and her remittance of payments for B2B's services. Nor can the Court entirely discredit Mr. Miley's deposition testimony, particularly given his specific denial

---

12. The Court rejects Plaintiff's assertion that it is undisputed that Mr. Miley directly participated in and authorized at least the "first fax blast campaign related to 7,652 successful fax transmissions." (Pl.'s Reply at 9.) Indeed, despite Plaintiff's assertion, Mr. Miley made no such admission. Rather, Mr. Miley specif-

ically stated that he did not "recall approving it," but recognized that at least one document reflected that he "did." (Miley Dep. at 34:16–25:3.) Given this testimony, issues of fact preclude the entry of summary judgment against Mr. Miley, even as to only the first fax campaign.

of knowledge and responsibility for the subject facsimile advertisements. (*See, e.g., id.* at 35:15–16 ("I don't recall approving [the ad], but this says I did."), 37:11–12 ("I have—let me just say this again: I don't recall any part of [the fax advertising]."), 38:13–23 ("I don't recall being part of [the fax advertising campaign]."), 52:22–23 ("I have no knowledge of the faxes at all, of the program or whatever it is.").) His specific denials of knowledge of these fax programs is admissible evidence, and the Court cannot weigh conflicting evidence in a summary judgment motion.

For all of these reasons, the Court finds that factual disputes preclude the entry of judgment with respect to the individual liability claim against Mr. Miley. *See Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 12–2257, 2014 WL 1333472, at \*3 (N.D.Ohio Mar. 28, 2014) (finding disputed facts precluded the entry of summary judgment with respect to the plaintiff's claim of personal liability against defendant's officer for any violations of the TCPA); *Jackson Five Star Catering, Inc. v. Beason*, No. 10–10010, 2013 WL 5966340, at \*4 (E.D.Mich. Nov. 8, 2013) (granting the plaintiff's motion for summary judgment where the record contained no dispute that the individual corporate officer participated in the payment of and authorization for the fax ads).

**5. The Record Demonstrates the Class's Entitlement to an Award of Statutory Damages in the Amount of $22,405,000**

 Having concluded that no issues of fact preclude the entry of summary judgment under the TCPA in favor of the Class, the Court turns to the parties' dispute concerning the calculation of statutory damages. Plaintiff submits that the

"*uncontroverted* record evidence," namely, the fax records obtained from the B2B hard drive and the expert testimony of Plaintiff's computer forensic expert, Neil L. Biggerstaff, reflect that "B2B successfully sent Defendants' advertisements 44,832 times to 29,113 unique targets." (Pl.'s Reply at 5 (citations omitted); *see also* Ex. G to Pl.'s Br. (concluding, based upon digital data provided by counsel for Plaintiff, that B2B's hard drive, shows "that a total of 44,832 successful transmissions of a 1–page fax were successfully sent and received by 29,113 unique fax numbers").) Therefore, after excluding the 21 requests for exclusion, and the one class member "who did not receive notice," Plaintiff claims that "there are 44,810 violations at issue in [this] motion," and requests an award of statutory damages in the amount of $22,405,000 (or, 44,810 multiplied by $500).[13] (Pl.'s Br. at 24.)

Defendants, however, oppose the assessment of damages on summary judgment on two grounds. First, Defendants argue that factual disputes concerning Mr. Biggerstaff's report preclude the entry of summary judgment, because "[n]ot a single piece of evidence connects [the] 'integral' [B2B] hard drive to the digital data" upon which Mr. Biggerstaff based his calculation of the disputed transmissions. (Defs.' Opp'n at 21.) In that regard, Defendants claim that issues regarding the "origin, authenticity, integrity, and chain of custody" plague the data provided to Mr. Biggerstaff, and seemingly speculate, without support, that counsel for Plaintiff potentially manipulated the digital data prior to providing it to Mr. Biggerstaff. (Defs.' Opp'n at 20–21 ("Plaintiffs' counsel has notably never offered any affidavit whatsoever from [counsel for Plaintiff] regarding

---

**13.** Under the TCPA, each facsimile transmission constitutes an independent violation. *See* 47 U.S.C. § 227. In calculating damages, the Court may award the greater of the party's "actual monetary loss" from the TCPA violation, or "$500 in damages for each" violation. 47 U.S.C. § 227(b)(3)(A)-(C)

the materials [counsel] provided to Mr. Biggerstaff").) Given these "disputed facts," Defendants argue that only a jury can determine the weight and evidentiary value of the expert evidence.[14] (*Id.* at 22.) Second, Defendants insist that "summary judgment cannot lie," because only a jury may determine the amount of damages to be assessed against third-party default defendants pursuant to "Defendants' Third Party Liability Judgment." (Defs.' Opp'n at 26–27.) The Court, however, finds both positions without merit, and will address each in turn.

### a. Biggerstaff's Reports and the Underlying B2B Records Constitute Admissible Evidence for Purposes of Summary Judgment

■ At the outset, the Court notes that, despite their dispute of the reliability of Mr. Biggerstaff's expert report, Defendants have not moved to exclude Mr. Biggerstaff's report under Federal Rule of Evidence 702 or otherwise addressed the relevant the applicable inquiry under *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). (*See generally* Defs.' Opp'n at 19–22.) Nor do Defendants challenge Mr. Biggerstaff's qualifications, the reliability

of the methodology he used to extrapolate the number of transmissions from the digital data, or the fact that he recovered David/Randall communications in the B2B data files.[15] Rather, Defendants only challenge the reliability of the underlying data Mr. Biggerstaff received from counsel for Plaintiff, based upon their assertion that Mr. Biggerstaff only reviewed a digital reimaging of the B2B records, rather than the underlying hard drive. (*See generally* Defs.' Opp'n at 19–22.)

In so arguing, however, Defendants ignore and mischaracterize the nature of the B2B information actually relied upon Mr. Biggerstaff.[16] Critically, in asserting that "[n]ot a single piece of evidence connects [the] 'integral' [B2B] hard drive to the digital data" relied upon by Mr. Biggerstaff (Defs.' Opp'n at 21), Defendants ignore the fact that Mr. Biggerstaff did indeed review B2B's "80GB hard drive" (Exs. N, O, P to Pl.'s Br. (all noting Mr. Biggerstaff's review of the "hard drive" and attaching photographs of the visual media), in addition to examining the contents of two separate DVD–ROMs. (Ex. G to Pl.'s Br. (noting that Mr. Biggerstaff reviewed the "Contents of a DVD–ROM labeled 'FAXING (1,2,3) 060715'" and "47

---

**14.** Defendant similarly argues that only the jury may determine an award of treble damages, because Defendants "vehemently dispute" that Defendants acted "knowingly and willfully." (Defs.' Opp'n at 25–26.) However, because Plaintiff has only requested an award of statutory damages (*see* Pl.'s Br. at 3–4), rather than treble damages, the Court need not address Defendants' position. (*See* Defs.' Opp'n at 25–26.)

**15.** For these reasons, the Court asked the parties on the oral argument record on February 25, 2015, whether a hearing under Federal Rule of Evidence 104 should be conducted prior to disposing of the pending motion. However, both parties indicated that no hearing was necessary. Counsel for Defendants stated that conducting a Rule 104 hearing at this stage of the proceedings would constitute

"untoward advocacy" in favor of the Class. For the reasons set forth herein, the Court will not hold a Rule 104 hearing, because the record amply supports the admissibility of Mr. Biggerstaff's expert reports and declarations.

**16.** In assessing the number of transmissions in this instance, Mr. Biggerstaff submitted an expert report dated June 22, 2009, declarations dated March 29, 2011, March 22, 2012, and June 19, 2014, a configuration and source course analysis dated December 1, 2010, and a data integrity analysis dated December 1, 2010. (*See, e.g.*, Exs. G, H, I, N, O, and P to Pl.'s Br.) In that regard, the Court agrees with counsel for Plaintiff that the admissibility of Mr. Biggerstaff's analyses must be adjudged based upon the totality of Mr. Biggerstaff's submissions.

U.S.C. § 227")).) Indeed, Mr. Biggerstaff certified that his review of the "contents and metadata" of the B2B computer records contained on the hard drive *and* the DVD–ROMs included an examination of:

a. [The] [o]perating system, configurations, and support files for a Slackware Linux server utilizing the HylaFAX faxing platform and MySQL databases;

b. Source code to the HylaFAX faxing platform;

c. Logs and other files automatically created by the system;

d. Hundreds of "verification faxes" where B2B included its own fax number in the list of fax destinations for a client fax broadcast, so as to verify the contents of the fax image and the proper processing of broadcasting jobs;

e. Internal correspondence regarding fax broadcasting activity and other business operations (such as scheduling of fax jobs, determining "counts" for client faxes, processing payments, instructions for dealing with vendors, and rollout of changes to fax "opt-out" notices);

f. Internal data such as customer lists, scripts, internal telephone assignments/routing details, databases, hardware/IP inventories;

g. External correspondence with customers regarding matters such as inquiries, new customer signup sheets, advertisement design, fax broadcasting jobs, payment instructions, voice mails, and checks; [and]

h. External correspondence with outside vendors, such as with phone companies regarding telephone service.

(Ex. P to Pl.'s Br.)

Defendants further ignore the fact that, despite Mr. Biggerstaff's exhaustive review, he reported that the B2B data revealed "no evidence of any attempts at alteration or manipulation of the B2B records after the fact, or any evidence of inconsistent metadata." (*Id.* at ¶ 9.) Rather, he found "the B2B records consistent with being contemporaneous records of day-to-day business operations kept by B2B and records automatically and con-temporaneous[ly] created by the B2B computer system," particularly given the records' consistency with "extrinsic data" retained by third parties, including "call detail records and copies of fax transmissions sent by B2B and received by others." (*Id.* at ¶¶ 9, 11, 13.) Mr. Biggerstaff therefore certified that, "to a very high degree of certainty," the B2B hard drive contains "authentic," "contemporaneously created," "and accurate records of B2B's business operations." (*Id.* at ¶ 12.) And, that the data identified, in relevant part, "44,832 successful and error-free transmissions of a[facsimile advertisement] to 29, 113 unique fax numbers." (Ex. H to Pl.'s Br.)

Despite the fact that Defendants' own forensic experts examined the hard drive, Defendants have not proffered *any* evidence, expert or otherwise, to question Mr. Biggerstaff's evaluation or the integrity of the hard drive data. (*See* Ex. C to Defs.' Opp'n to Pl.'s Mot. for Class Certification (discussing the January 17, 2011 examination of the B2B hard drive by Defendants' "forensic experts").) Nor have Defendants challenged the consistency between Mr. Biggerstaff's calculation of the number of transmissions at issue in the pending motion, 44,810, and the number of faxes collectively requested by Ms. Clemmer's correspondence. (*See, e.g.,* Ex. 14 to Clemmer Dep. (requesting a campaign of 12,000 faxes); Ex. 15 to Clemmer Dep. (requesting, on another occasion, a campaign of 12,000 faxes); Ex. 19 to

Clemmer Dep. (requesting, on another occasion, a campaign of 18,000 faxes).) Rather, Defendants rely upon the "evidentiary deficiencies and chain-of-custody issues" purportedly identified by the Court in its certification decision. (Defs.' Opp'n at 20.)

However, the Court's certification decision found Defendants' challenges to the hard drive's admissibility insufficiently weighty to defeat Plaintiff's showing of probable admissibility.[17] *City Select Auto Sales, Inc.*, 296 F.R.D. at 317. In connection with the pending motion, these prior conclusions remain unchanged, particularly given Defendants' failure to cite record evidence demonstrating a genuine dispute as to the reliability of the hard drive data, *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir.1995), and the fact that the Court need only find the evidence potentially admissible at trial. *See Hurd v. Williams*, 755 F.2d 306, 308 (3d Cir.1985). Given the submissions, Mr. Biggerstaff's reports easily meets this standard, despite Defendants' unsupported speculation. *See Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir.2010) ("speculation and conjecture may not defeat summary judgment").

The Court further finds sufficient evidence in the record to demonstrate the authenticity of the B2B records. Critically, in order to be considered as evidence for purposes of summary judgment, documents must be properly authenticated in accordance with Federal Rule of Evidence 901(a). Rule 901(a) does not, however, "erect a particularly high hurdle," *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 779 (7th Cir.2006), and Plaintiff need only produce "evidence sufficient to support a finding that the matter in question" constitutes "what the proponent claims." Fed.R.Evid. 901(a).

Here, Ms. Abraham's affidavit states that, she produced (or caused to be produced) "an original computer hard drive" marked S/N: WCAHL6653150 and "two DVD Rom disks," all of which contained "B2B's electronically stored information and computer generated records." (Abraham Aff. at ¶ 4.) In addition, Ms. Abraham certified that B2B "contemporaneously" stored its electronic date, and that "[a]ll B2B data remained in [her] personal residence, untouched" and "unaltered since its creation."[18] (*Id.*) Mr. Biggerstaff, in turn,

---

**17.** Moreover, the Court specifically stated that it would not find the hard drive inadmissible, without an evidentiary hearing, particularly because various individuals could be called "to address potential evidentiary deficiencies." *City Select Auto Sales, Inc.*, 296 F.R.D. at 317. Defendants, however, have requested no such hearing, and indeed rejected the need for such a hearing on the oral argument record on February 25, 2015.

**18.** Nor does the Court find that Ms. Abraham's declaration must be rejected because it purportedly contradicts claims she "made in other declarations and sworn statements" in connection with other litigation. (*See*, Defs.' SMF at ¶ 10.) Notably, Defendants do not contend the alleged contradictions necessarily render the affidavit a " 'sham,' " or dispute that contradictions alone fail to warrant the

rejection of a signed affidavit in its entirety. *See Madden v. A.I. DuPont Hosp. for Children of the Nemours Foundation*, 264 F.R.D. 209, 221 (E.D.Pa.2010) (noting the Court of Appeals' " 'flexible approach' " to the "sham affidavit" doctrine, and "observing that 'not all contradictory affidavits are necessarily shams' "). Nor do Defendants point, with specificity, to any particularly troubling excerpts from prior affidavits. Rather, Defendants cryptically refer the Court to their prior briefing, and "incorporate[ ] by reference" approximately 50 exhibits, spanning over 1000 pages. This fails to suffice for purposes of Local Civil Rule 56.1(a) which requires a party opposing summary judgment to state each material fact in dispute and "cit[e] to the affidavits and other documents submitted in connection with the motion;.... In addition, the opponent may also furnish a supple-

confirmed that the electronic data showed no signs of manipulation or alteration, nor any other cause to question its integrity. (Ex. P. to Pl.'s Br.) Indeed, Mr. Biggerstaff found the contents consistent with Ms. Abraham's declaration, with the various documents exchanged by the parties in this litigation, *and* with contemporaneously archived data retained by third parties. (*See, e.g.,* Exs. G, P to Pl.'s Br.)

Therefore, the Court finds that the record sufficiently supports the B2B hard drive's authenticity, and that the B2B hard drive meets the admissibility standard for purposes of summary judgment, and as a basis for Biggerstaff's expert opinion testimony.

In so concluding, the Court follows the weight of authority that has already found Mr. Biggerstaff's analysis admissible and sufficient to support the entry of summary judgment in favor of the Class. *See, e.g., Paldo Sign & Display Co.,* 67 F.Supp.3d 874, No. 09–7299, 2014 WL 4376216 (granting summary judgment based upon Mr. Biggerstaff's extrapolated analysis); *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.,* No. 09–1162, 2013 WL 3654550 (W.D.Mich. July 12, 2013), *aff'd,* 757 F.3d 540 (6th Cir.2014) (finding Mr. Biggerstaff's analysis reliable for purposes of summary judgment); *Jackson Five Star Catering, Inc. v. Beason,* No. 10–10010, 2013 WL 5966340 (E.D.Mich. Nov. 8, 2013) (same). Therefore, the Court turns to Defendants' position concerning the third-party default defendants.

### b. Any Outstanding Issue Concerning the Third–Party Default Defendants Does Not Preclude the Entry of Summary Judgment in Favor of the Class

The Court, however, need not belabor Defendants' position concerning an assessment of damages *as against* the third-party defendants, because such an issue has no relevance to whether the undisputed record evidence entitles the Class to entry of judgment against David/Randall and/or Mr. Miley. Indeed, Plaintiff has asserted *no* direct claims against the third-party defendants, Caroline and Joel Abraham. To the contrary, Defendants filed a Third–Party Complaint, seeking, in primary part, to hold the Abrahams jointly and severally liable "for the exact amount of any judgment" that may be entered against Defendants in this action. (Third–Party Complaint at ¶ 18.) Following the third-party defendants failure to respond, the Court then entered *default* against the Abrahams on December 17, 2012 as to the Third–Party Complaint. [Docket Item 53.] Consequently, any assessment of the judgment to be entered against the Abrahams and in favor of Defendants/Third–Party Plaintiffs for contribution or indemnification would necessarily follow a determination of the Class's entitlement to judgment against Defendants. Moreover, despite Defendants' assertion that the Court "entered Judgment as to liability," no *default judgment* has ever been entered,[19] and the monetary damages ultimately assessed in a default judgment, if

---

mental statement of disputed material facts, in separately numbered paragraphs citing to the affidavits and other documents submitted in connection with the motion, if necessary to substantiate the factual basis for opposition." It is not the duty of this Court to sift through a thousand pages of documents to see whether some might contain material contradictions to the statements in the Abraham and Biggerstaff declarations.

**19.** Under Federal Rule of Civil Procedure 55 obtaining a default judgment requires a two-step process. *See* FED. R. CIV. P. 55. First, when a party fails to plead or otherwise defend, the clerk must enter that party's default. *See* FED. R. CIV. P. 55(a). Following default, the non-defaulting party may then move for a default judgment. *See* FED. R. CIV. P. 55(b). Here, Defendants have only completed the first phase, that is, entry of default.

any, do not defeat summary judgment in favor of the Class.

█ In addition, the Court finds no support for Defendants' position that the third-party defendants' failure to respond to Defendants' Third–Party Complaint, renders the allegations of the Third–Party Complaint "facts of record" sufficient to create "a genuine issue of material fact with regard to contrary claims by the Plaintiffs in their Complaint." (Defs.' Opp'n at 27–30.) To the contrary, because the Third–Party Complaint asserted *no* claims against Plaintiff or the Class, Plaintiff had no obligation to "admit or deny" any of the allegations set forth in the third-party Complaint. *See* FED. R. CIV. P. 8(b)(1)(B) (providing that, "[i]n responding to a pleading, a party must: admit or deny the allegations *asserted against* it by an opposing party.") (emphasis added). And, Defendants' mere reference to Plaintiff and/or Defendants' assertion of allegations contrary to those set forth by Plaintiff does not alter this conclusion. Therefore, the allegations of the Third–Party Complaint cannot be deemed admitted as against the Class under Federal Rule of Civil Procedure 8(b)(6) for purposes of the pending motion.

### c. Determination of Damages and Entry of Judgment

As stated above, the Court finds Mr. Biggerstaff's report reliable and trustworthy as to the number of violative facsimile transmissions successfully sent in this instance, and consistent with the number of transmissions directly requested and approved by Defendants.

Therefore, the Court will grant Plaintiff's motion for class-wide summary judgment, and will enter judgment in favor of

the Class, based upon the sum of the unsolicited transmissions multiplied by the amount of statutory damages provided under the TCPA. *See Siding & Insulation Co. v. Combined Ins. Grp., Ltd., Inc.*, No. 11–1062, 2014 WL 1577465, at *5 (N.D.Ohio Apr. 17, 2014) (granting Plaintiff's request for summary judgment in part, and finding Plaintiff entitled to damages in the amount of $25,000 for the 50 faxes sent in violation of the TCPA); *Vandervort v. Balboa Capital Corp.*, 8 F.Supp.3d 1200 (C.D.Cal.2014) (approving a TCPA class action settlement of a range "of no less than $2.3 million and no more than $3.3 million"); *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1305 n. 1 (11th Cir. 2008) (describing a TCPA settlement agreement in the amount of $12 million judgment, which was calculated by multiplying the 24,000 unsolicited facsimile advertisements it transmitted by $500); *Hinman v. M & M Rental Ctr., Inc.*, 596 F.Supp.2d 1152 (N.D.Ill.2009) (granting plaintiffs' motion for summary judgment in part, and finding the class entitled to statutory damages in the amount of $3,862,500, based upon 7,725 unsolicited advertisements; and, following summary judgment, ultimately approving a settlement of $5,817,150); Yuri R. Linetsky, *Protection of "Innocent Lawbreakers": Striking the Right Balance in the Private Enforcement of the Anti "Junk Fax" Provisions of the Telephone Consumer Protection Act*, 90 NEB. L.REV. 70, 93 (2011) (citing the multitude of cases entering million dollar-plus judgments in TCPA actions). This Court, therefore, finds that the Plaintiff has proved Defendants liable for statutory damages in the amount of $22,405,000, and summary judgment will be entered against David/Randall Associates, Inc. in that amount.[20]

---

20. Counsel are requested to confer, as discussed at oral argument of this motion, whether a judgment in a significantly smaller sum would likely provide full statutory recovery to all probable members of the Class who respond and file claims. For example, if the typical "yield" of the notice of a class claims process is assumed to be 15%, based on expe-

## VI. CONCLUSION

For all of these reasons, Defendants' motion for decertification will be denied, Plaintiff's motion for class-wide summary judgment will be granted as to David/Randall Associates, Inc., and denied as to Raymond Miley, III. Therefore, the Court will enter Judgment in favor of the Plaintiff Class and against Defendant David/Randall Associates, Inc. in the amount of $22,405,000. An accompanying Order will be entered.

rience, then a judgment fund of 15% of $22,405,000, which is $3,360,750, may suffice, subject to future adjustment based on claims approved. Counsel are invited to discuss the viability of such a mechanism to implement this judgment in the class action context.